IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

HARRY WILEY, individually
and on behalf of all others similarly situated,

     Plaintiff,

v.

ROBERT F. KENNEDY, JR., in his
official capacity as Secretary of Health
and Human Services, and
U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,

     Defendant.

Civil Action No. 2:25-cv-227
(Honorable Irene C. Berger)

REQUEST FOR TEMPORARY
RESTRAINING ORDER UNDER
FED. R. CIV. P. 65(B)

### AMENDED COMPLAINT

1.     Coal miners face some of the greatest hazards of all American workers, including a recent epidemic of advanced coal mine dust lung disease ("CMDLD") as miners cut sandstone to reach the heavily depleted thin-seam coal reserves that remain after a hundred years of mining in Appalachia. In order to prevent black lung from developing into totally-disabling progressive massive fibrosis, the federal mine safety statutes since 1969 have afforded American coal miners a medical screening and epidemiological surveillance program, along with a unique right to transfer to a non-dusty job if they begin developing early signs of occupational lung disease.

2.     With no advance notice, on April 1, 2025, Defendant terminated most of the critical employees, including the chief medical officer, overseeing the CMDLD screening and job transfer

programs, thus jeopardizing miners---like the Plaintiff, Mr. Wiley---who seek to utilize these critical and time-sensitive protections from continued dust exposure and debilitating disease.

3.      The Coal Mine Health and Safety Act of 1969, as amended, has long provided both a health screening program to detect disease and the associated right to transfer upon detection of black lung. *See generally* 30 U.S.C. § 843. The epidemiology program is known as the Coal Workers' Health Surveillance Program ("CWHSP"). The job transfer program is known in the mining industry by the name of its implementing regulation, "Part 90." 30 C.F.R. Part 90.

4.      The utilization of Part 90 has increased roughly tenfold in the past few years as miners became aware of increasingly severe CMDLD in Central Appalachia. So the need for access to this program is urgent and growing in the face of severe hazards of exposure to respirable crystalline silica dust from the mining of sandstone to reach thin coal seams.

5.      For these reasons, NOW COMES Plaintiff, Harry Wiley, on behalf of himself and others similarly situated, and brings this Class Action Complaint for declaratory judgment and injunctive relief against Defendant---the U.S. Department of Health and Human Services and its Secretary, Mr. Robert F. Kennedy, Jr.---seeking a declaration that Defendants comply with their statutory duties under 30 U.S.C. § 843 (requiring examinations of coal miners and affording job transfer rights); 30 U.S.C. § 811(a)(7) (providing authority for examinations of all miners generally); 30 U.S.C. § 811(a)(9) (anti-backsliding provisions providing that no Administration may weaken protections for miners); and with the requirements of their own existing regulations, 30 C.F.R. Part 90, and cease depriving him of due process of law, by restoring all personnel in the Respiratory Health Division of the National Institute for Occupational Safety and Health who are integral to carrying out the epidemiological surveillance and job transfer provisions of the Mine Safety and Health Act of 1977.

**JURISDICTION AND VENUE**

6.      Jurisdiction over Plaintiff's claims is founded on the existence of a federal question. This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, and the Fifth Amendment to the U.S. Constitution, and jurisdiction is conferred pursuant to 28 U.S.C. § 1331 (federal question).

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this District is where Plaintiff works and therefore, where a substantial portion of the events or omissions giving rise to this action occurred.

8.      This Court is empowered to grant declaratory and injunctive relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706, for violations of, *inter alia*, the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and because the Department's actions are contrary to the Fifth Amendment to the U.S. Constitution.

**PARTIES**

9.      Plaintiff Harry Wiley was at all times relevant a resident of Kanawha County, West Virginia.

10.     At all relevant times, Mr. Wiley was employed as a coal miner within Kanawha County in the Southern District of West Virginia.

11.     At all relevant times, Defendants conducted operations of the CWHSP and Part 90 throughout the Southern District of West Virginia.

12.     Defendant U.S. Department of Health and Human Services contains the National Institute of Occupational Safety and Health ("NIOSH"), within which the Respiratory Health Division operates the CWHSP and Part 90 programs.

13.    Defendant Mr. Robert F. Kennedy, Jr., is the Secretary of the U.S. Department of Health and Human Services.

## STATEMENT OF FACTS

### *Overview of NIOSH's Coal Miner Health Programs: Background.*

1.    In the federal Coal Mine Health and Safety Act of 1969 (the "CMHSA"), Congress established a program for monitoring the lung function of America's coal miners and affording them the right to transfer to a low-dust job if they began developing black lung disease. *See* 30 U.S.C. § 843. This program is commonly known by the name of its implementing regulation, "Part 90." 30 C.F.R. Part 90.

2.    The statute directs the low-dust job transfer program to be located within the U.S. Department of Health and Human Services. 30 U.S.C. § 843. The CMHSA was amended by the federal Mine Safety and Health Act of 1977 (the "Mine Act"), which expanded miners' rights and preserved the rights in the CMHSA.

3.    NIOSH and the Mine Safety and Health Administration have utilized these provisions of the Mine Act to continually improve protections for miners in the coal and other mineral mining industries---always improving and never rescinding the degree of protections provided under the law. Indeed, the Mine Act contains an anti-backsliding provision. *See* 30 U.S.C. § 811(a)(9) (providing that no Administration may weaken protections for miners); 30 U.S.C. § 811(a)(7) (providing authority for examinations of all miners generally).

4.    The Occupational Safety and Health Act of 1970 established NIOSH as the research wing of the Occupational Safety and Health Administration, augmenting the statutory mandate for the Respiratory Health Division within NIOSH that carries out both the OSH Act and Mine Act. *See* 29 U.S.C. § 671; Pub. L. No. 91-596, § 22 (1970).

5.      Following the Sago Mine Disaster in 2006, Congress permanently established NIOSH's Office of Mine Safety and Health to advance the technology-forcing health and safety protections of the Mine Act. *See* 29 U.S.C. § 671(h); MINER Act, Pub. L. No. 109-236, §6 (2006) (amending section 22 of the OSH Act); *see also* 30 U.S.C. § 863(b) (Mine Act requires coal mine operators to maintain ventilation controls in all work areas sufficient "to reduce the level of respirable dust to the lowest attainable level").

6.      Among many other things, NIOSH recommends criteria for lifesaving workplace health and safety standards; investigates workplace outbreaks and safety crises at the request of employers and workers and provides recommendations and guidance for making workplaces safe and healthy; certifies experts qualified to analyze chest X-rays of black lung claimants against global standards for assessing the extent of lung damage; operates a periodic mobile black lung clinic to provide miners chest exams, free of charge; enables research into injuries and deaths of children engaged in farmwork; provides estimates of work-related exposures to radiation to enable the Department of Labor to assess the eligibility of workers in the nation's nuclear weapons program for the Energy Employees Occupational Illness Compensation Program Act of 2000 (EEOICPA) compensation for their cancers and other diseases; incentivizes the development of new mine safety technologies and tests them in real-world mining environments; leads the nation's largest initiative to track and understand the incidence of cancer among the nation's firefighters; and, through its National Personal Protective Technology Laboratory (PPT Lab), advances the science and effective use of Personal Protective Equipment (PPE), such as respirators, footwear covers, and eye protection, on which 20 million workers (including one million firefighters) rely.

***Part 90 Application Process***

7.      There are two means by which miners may apply for protection under Part 90. *See generally* 42 C.F.R. § 37.100-103; 30 C.F.R. § 90.3, 90.102, 90.102T.

8.      First, the miner may participate in the screening program provided by his or her coal mine employer under the Mine Act, which will automatically submit the results to NIOSH. 42 C.F.R. § 37.100. Underground coal mine operators should either have a NIOSH approved plan for medical examinations under Section 203(a) of the Act and 42 C.F.R. Part 37 or comply with a written notice of arrangements for medical examinations that were made by NIOSH. In either instance, the operator is required to post the approved plan or NIOSH Notice for medical examinations on the mine bulletin board.

9.      Second, and in the alternative, miners may submit an application to the NIOSH CWHSP providing evidence of the development of pneumoconiosis that they have developed at their own expense. *See* 42 C.F.R. § 37.103. NIOSH will evaluate the evidence in the same manner as if it were submitted under the operator's plan or the NIOSH arrangements. This is the means by which Mr. Wiley applied for Part 90.

10.      After interpretation of a miner's chest x-ray, NIOSH's Respiratory Health Division informs the miner of any rights he or she may have under Part 90 and includes a copy of the NIOSH report of medical findings in a letter to the miner. If the interpretation reveals evidence of pneumoconiosis, the miner also receives a form that is to be used to exercise the option to work in a low-dust area of a mine. If the findings from NIOSH show evidence of the development of pneumoconiosis, the miner will be awarded the right to exercise the Part 90 option.

11.      Once an eligible miner exercises his or her job transfer right, they retain the right to rescind the exercise of that right and re-exercise it at any point later in their career so long as

they remain eligible according to NIOSH. *See* 42 C.F.R. § 37.102; 30 C.F.R. § 90.3, 90.104, 90.104T ("Waiver of rights; re-exercise of option").

12.     After transferring, Part 90 miners are protected by frequent dust sampling to ensure compliance with a reduced coal mine dust exposure limit.

13.     Congress specifically appropriated funds to NIOSH for carrying out its obligations under the Mine Act and Part 90 in 2024 and 2025. *See* Further Consolidated Appropriations Act, 2024, PL 118-47, 138 Stat. 460, 654 (2024); American Relief Act, 2025, PL 118-158, 138 Stat. 1722 (2024); Full-Year Continuing Appropriations and Extensions Act, 2025, PL 119-4, 139 Stat. 4 (2025).

***Harry Wiley Applies for Part 90 in November 2024***

14.     In 2024, Mr. Harry Wiley learned he had developed coal workers' pneumoconiosis or "Black Lung" Disease.

15.     Black Lung is a latent and progressive disease that has a gradual onset, and becomes compounded with further exposure to hazardous dust.  Early detection and removal of dusty hazards is the key to preventing the disease from progressing to the advanced, totally-disabling form known as progressive massive fibrosis.

16.     On November 7, 2024, Mr. Harry Wiley took the initial step in applying for transfer to a non-dusty job under Part 90 by completing Form 0920-0020.

17.     On November 8, 2024, Mr. Wiley mailed the form and a radiographic image of his chest by certified mail to the NIOSH Coal Workers' Health Surveillance Program, 1000 Frederick Lane M/S LB208, Morgantown, WV 26508.

18.     As of the filing of this Complaint, Mr. Wiley has received no response from the CWHSP.

19.     Mr. Wiley remains actively employed in underground coal mines, facing daily exposures to hazardous coal mine dust that would be prevented by a Part 90 transfer.

**Defendants Terminate NIOSH Coal Workers' Health Programs**

20.     On March 27, 2025, workers at the NIOSH facility in Morgantown (the "Morgantown Facility") received a notice of intent to conduct a reduction in force.

21.     On April 1, 2025, Defendants notified nearly all employees at the Morgantown Facility at 1000 Frederick Lane that they were terminated or placed on administrative leave (the "Respiratory Health Division Closure"), including the chief medical officer of the Respiratory Health Division who oversees the CWHSP, the Part 90 evaluation program, and the B-reading certification program.

22.     Without the Respiratory Health Division, NIOSH is unable to process all of its incoming and pending Part 90 applications such as that of Mr. Wiley.

23.     On information and belief, because of the Respiratory Health Division Closure, Defendants, among other things, are unable to effectively discharge their mandatory statutory duties to administer the low-dust job transfer program as required by the Mine Act.

24.     On information and belief, Defendants have not reallocated the funds that would have provided for the full staffing of the Respiratory Health Division and the carrying out its statutory duties under the Mine Act to any other division of NIOSH or HHS for the purpose of implementing the CWSHP or Part 90 job transfer program.

25.     On information and belief, Defendants have not made any communications to Congress about deferring or rescinding the budgetary authority for the 30 U.S.C. § 843 programs, as would be required for an impoundment under the Impoundment Control Act. *See* 2 U.S.C. §§ 682-88.

**CLASS ALLEGATIONS**

26.     Plaintiff brings this action on his own behalf and on behalf of all other similarly situated individuals, pursuant to Rule 23 of the *Federal Rules of Civil Procedure*. The class consists of all coal miners who show evidence of the development of pneumoconiosis, and thus are seeking eligibility as Part 90 miners or who are entitled to seek a job transfer under Part 90.

27.     The requirements of Rule 23(a) are satisfied as follows:

(a)     The class is numerous, with thousands of members, and joinder is impracticable due to the high number of putative Class Members, who are geographically spread around the region, making their joinder impracticable;

(b)     There are questions of law and fact common to all putative Class Members, which predominate over any questions affecting only individual members, *i.e.*, did the Respiratory Health Division Closure prevent miners such as Mr. Wiley and others from participating in the CWHSP and Part 90 job transfer programs;

(c)     The named Plaintiff's claims are typical of those of the Class as a whole because the named Plaintiff was deprived of health surveillance and job transfer rights in the same manner as were the rest of the putative Class Members.

(d)     The Plaintiff has displayed an interest in vindicating the rights of the Class Members, will fairly and adequately protect and represent the interests of the Class, and is represented by skillful and knowledgeable counsel. The relief sought by the named Plaintiff will inure to the benefit of the putative Class generally and the named Plaintiff has no conflict to pursuing the interests of putative Class Members.

28.     The requirements of Rule 23(b)(2) are also satisfied as follows:

(a)    Prosecuting separate actions by individual putative Class Members would create a risk of: (1) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the Class; or (2) adjudications with respect to individual putative Class Members that, as a practical matter, would be dispositive of the interests of the other Members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; and

(b)    Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**COUNT I – DECLARATORY JUDGMENT**
**5 U.S.C. §§ 702, 706**

29.    Plaintiff incorporates the preceding paragraphs by reference.

30.    A person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof pursuant to the Administrative Procedure Act. 5 U.S.C. § 702.

31.    In actions for declaratory judgment under the Administrative Procedure Act, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall (1) compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(a).

32.    The Department of Health and Human Services fulfills its twin obligations to conduct health surveillance and the job-transfer program under 30 U.S.C. § 843 by operating the Respiratory Health Division of NIOSH in Morgantown, West Virginia.

33.     By closing the Respiratory Health Division, Defendants are violating their nondiscretionary mandatory statutory duties to conduct health surveillance and the job-transfer program under 30 U.S.C. § 843.

## COUNT II – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
## 5 U.S.C. § 706(2)(A) – Arbitrary, Capricious, and Unlawful Agency Action

34.     Plaintiff incorporates the preceding paragraphs by reference.

35.     The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

36.     Agency action is arbitrary and capricious if it is not the product of reasoned decision-making. This means, among other things, that an agency must provide an adequate evidentiary basis for its action and consider all important aspects of such action.

37.     Upon request, the Defendants failed to adjudicate Plaintiff's Part 90 application, failed to issue notice of his right to transfer, and failed to tender an opportunity to be heard on the effective denial of these job transfer rights.

38.     Defendants' decision to terminate the staff at the Respiratory Health Division and thereby stop implementing the mandatory Section 843 programs (CWHSP and Part 90) was arbitrary and capricious.

39.     Defendants' decision to terminate the staff at the Respiratory Health Division and thereby stop implementing the CWHSP and Part 90 programs was contrary to law because it violated the Defendants' duties under the Mine Act. *See* 30 U.S.C. § 843.

40.     Defendants' decision to terminate the staff at the Respiratory Health Division and thereby stop implementing the CWHSP and Part 90 was contrary to law because it defied the

Congressional appropriation of funds for the CWSHP in 2024 that were continued through the end of 2024 and 2025.

41.     Defendants' decision to terminate the staff at the Respiratory Health Division and thereby stop implementing the CWSHP and Part 90 was contrary to law because it was an impoundment of funds appropriated by Congress and therefore a violation of the Constitutional separation of powers between the legislative and executive branches.

42.     Defendants' decision to terminate the staff at the Respiratory Health Division and thereby stop implementing the CWHSP and Part 90 was contrary to law because it was an impoundment of funds appropriated by Congress that did not comply with the Impoundment Control Act. 2 U.S.C. §§ 682-88.

43.     Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by the Department's arbitrary, capricious, and unlawful conduct because he has lost any effective means by which he can utilize his Part 90 job transfer rights or to undergo x-ray and pulmonary testing again under the CWHSP to re-start a new application, and the Respiratory Health Division must therefore be vacated and permanently enjoined.

### COUNT III - DEPRIVATION OF PROCEDURAL DUE PROCESS
### (U.S. Constitution, Fifth Amendment)

44.     Plaintiff incorporates the preceding paragraphs by reference.

45.     Plaintiff possesses important property interests in accessing the CWHSP to monitor the progression of his disease and in transferring to a low-dust job---important, life-saving benefits afforded to him and the putative class under 30 U.S.C. § 843.

46.     Plaintiff is entitled to a legal mechanism within the Department of Health and Human Services that affords him the means of demonstrating his eligibility for a job transfer, and

a reasonable measure of notice and an opportunity to contest the denial of such transfer rights, as well as meaningful access to the respiratory health monitoring programs of the CWHSP.

47.     Consistent with the statute, 30 U.S.C. § 843, and regulations 30 C.F.R. Part 90 and 42 C.F.R. Part 37, the Plaintiff should have received notice of his eligibility to transfer to a low-dust job, and a transfer form by which he could notify his employer of his wish to be maintained in a low-dust work environment.

48.     As an active coal miner, Plaintiff also should retain access to participating in the CWHSP and, critically, he must have access to obtain his medical records from that program that are retained at the RHD in Morgantown.

49.     The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotations and citations omitted).

50.     A recipient of a government-dispensed benefit may not be subsequently deprived of that benefit without the protections of due process, such as by providing meaningful and effective notice regarding how to protest the loss or an alternate means to access the benefits due to the beneficiary---such by explaining how Plaintiff could obtain his job transfer and medical monitoring, rather than summarily abandoning his Part 90 claim and closing the CWHSP as Defendants have done---and an opportunity to be heard upon the failure to provide the statutorily required benefits.  *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970).

51.     Defendants have violated Plaintiffs' rights under the Fifth Amendment, without affording him due process of law, when they closed the NIOSH Respiratory Health Division, failed

to adjudicate his Part 90 application, failed to issue notice of his right to transfer, failed to tender an opportunity to be heard on the effective denial of these job transfer rights, and shuttered the CWHSP that would have afforded him access to periodic pulmonary testing to monitor the progression of his Black Lung disease.

52.    Defendants will continue to deprive Plaintiff of due process of law absent the relief demanded in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court:

I.    Declare that Defendants, in arbitrarily, capriciously, and unlawfully failing to fulfill their mandatory duties under 30 U.S.C. § 843 and spend the funds appropriated therefore, have violated the Administrative Procedure Act as alleged;

II.    Declare that Defendants must fully restore the NIOSH Respiratory Health Division in Morgantown, West Virginia;

III.    Compel Defendant to continue conducting health surveillance through the CWHSP and the job-transfer program under 30 U.S.C. § 843 by operating the Respiratory Health Division of NIOSH in Morgantown, West Virginia;

IV.    Award such other equitable or remedial relief as may be appropriate;

V.    Certify a class of all coal miners in the United States who have evidence of the development of pneumoconiosis, and are thus eligible to obtain a job transfer under Part 90;

VI.    Award to Plaintiff and his attorneys all reasonable costs and expenses, including attorneys' and expert witness fees, pursuant to 28 U.S.C. § 2412(d)(2)(A) and 5 U.S.C. § 702; and

VII.    Grant any such other and further relief as this Court may deem equitable and just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**Respectfully Submitted,**
**HARRY WILEY, individually and on behalf**
**of all others similarly situated,**
**By counsel:**

 */s/ Samuel B. Petsonk*
Samuel B. Petsonk (WVSB #12418)
PETSONK PLLC
PO Box 1045
Beckley, WV 25802
(304) 900-3171 (phone)
(304) 986-4633 (fax)
sam@petsonk.com


 */s/ Bren J. Pomponio*
Bren J. Pomponio (WVSB #7774)
MOUNTAIN STATE JUSTICE, INC.
1217 Quarrier Street
Charleston, West Virginia 25301
(304) 344-5565
(304) 344-3145 (fax)
bren@msjlaw.org

 */s/ J. Michael Becher*
J. Michael Becher (W.Va. Bar # 10588)
APPALACHIAN MOUNTAIN ADVOCATES
PO Box 507
Lewisburg, WV 24901
(304) 382-4798
mbecher@appalmad.org