IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**HARRY WILEY, individually
and on behalf of all others similarly situated,**

    **Plaintiff,**

v.                                                             Civil Action No. 2:25-cv-0227
                                                              (The Honorable Irene C. Berger)

**ROBERT F. KENNEDY, JR., in his
official capacity as Secretary of Health
and Human Services, and
US DEPARTMENT OF HEALTH AND
HUMAN SERVICES**

    **Defendants.**

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

### I. INTRODUCTION

To begin, having established a likelihood of success on his claim arising under the Administrative Procedures Act ("APA"), Plaintiff stipulates to the dismissal of Count III of his Amended Complaint,[1] (*see* Am. Compl. ¶¶ 44-52 [ECF Doc. # 10]), because he may be accorded full relief on the APA claim. However, as is more fully set forth below, Plaintiff opposes the dismissal of Counts I (Declaratory Judgment) and II (Violation of the APA).[2]

Defendants argue that the Court should dismiss this matter because the named Plaintiff lacks standing, because of sovereign immunity, and because of technical deficiencies they claim prevent the application of the Administrative Procedures Act ("APA"). Notably, Defendants do not

---

[1] In a separately filed Response, Plaintiff also abandons his demand for a jury trial.

[2] Because many of these issues were extensively briefed in Plaintiff's Reply in Support of Preliminary Injunction, [ECF Doc. # 25], Plaintiff incorporates that Memorandum of Law by reference.

1

and cannot dispute that the actions of the Defendants in two separate rounds of Reduction in Force ("RIF") effectively eliminated the Respiratory Health Division of NIOSH. Nor can Defendants dispute that the Coal Workers Health Surveillance Program ("CWHSP") is currently shut down and Defendants are therefore not presently complying with mandatory statutory duties set by Congress in the federal Coal Mine Safety and Health Act as amended by the Federal Mine Safety and Health Act ("Mine Act"). While the Defendants gesture vaguely at plans for reorganization, they have presented as evidence only a cursory press release and fact sheet. There is absolutely no evidence that the functionality of the Respiratory Health Division will be restored, in what time frame the reorganization will be performed, and whether the specialized expertise of the Respiratory Health Division will be preserved.

In contrast to the Defendant's position Plaintiff presented evidence that there is no rational plan behind the so-called reorganization. (*See* Mot. for Prelim. Inj. at Exs. B [ECF Doc. # 7-2] (Press Release quoting Secretary Kennedy as stating "we're going to do 80% cuts, but 20% of those are going to have to be reinstated, because we'll make mistakes) and C [ECF Doc. # 7-3] ("RFK Jr. says he's 'not familiar' with all the health program cuts in exclusive interview.").) Each of the NOISH staff members who testified in the preliminary injunction hearing stated they were not aware of any plans for reorganization. (Transcript of Prelim. Inj. Hrg. at 50–51, 73, 81, 89 (May 7, 2025) ("Tr.").) Further, witnesses at the hearing were uniform in their testimony that essential statutorily mandated services offered by the Respiratory Health Division through its CWHSP had been curtailed. (Tr at 17, 24–25, 37–38, 54–55, 70, 80–81, 107.) The Center for Disease Control's website, up until May 13, confirmed as much—notifying the public that "the NIOSH Coal Workers' Health Surveillance Program (CWHSP) is not providing any new medical screenings to coal miners or accepting any new requests for review of medical information to

determine coal miners' rights for transfer to low-dust jobs."[3] Finally, witnesses at the preliminary injunction hearing presented substantial evidence that their work is not duplicated elsewhere in the federal government, and indeed they serve in a very small community of workers with very specialized expertise. (Tr. at 46–49, 81.)

These facts established during the hearing further support the allegations made in Plaintiff's Amended Complaint. Plaintiff alleged that Defendants were unable to effectively administer services to meet their mandatory duties under the relevant statutes. (Am. Compl. ¶¶ 22–23, ¶ 33, ¶ 39.) Further, Plaintiff alleged that funding had not been reallocated to other programs within the federal government to fulfill the Defendants' mandatory duties. (*Id.* ¶ 24.) And finally, that Harry Wiley himself continues to work in hazardous conditions and is unable to take advantage of Department of Health and Human Services ("DHHS") screenings or examinations of medical evidence. (*Id.* ¶ 19, ¶ 43.)

Most importantly, with respect to the gravamen of Plaintiff's Amended Complaint – the APA claim – this Court has already determined Plaintiff established a likelihood of success. (Mem. Op. & Order at 22 (May 13, 2025) ("Mr. Wiley has established a strong likelihood of success on the merits of his APA claim.") [ECF Doc. # 36].) Moreover, the Court specifically found, "Mr. Wiley has presented evidence of actual, concrete, particularized, imminent injury causally connected to the Defendants' actions indefinitely "pausing" the CWHSP, and that injury would likely be addressed by the relief sought. (*Id.* at 17) As it did just a few days ago, the Court should reject the Defendants' arguments; a denial of the Motion to Dismiss is appropriate.

---

[3] As of May 15, Defendants have taken down their message that the CWHSP is not accepting requests for review nor conducting medical screenings. *See* https://www.cdc.gov/niosh/cwhsp/about/index.html (last visited May 15, 2025) (Ex. A).

## II. LEGAL STANDARD

A motion to dismiss filed pursuant to *Federal Rule of Civil Procedure* 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the *Federal Rules of Civil Procedure*] (providing general rules of pleading) ... and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id. Federal Rule of Civil Procedure* 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When a defendant asserts that the court is without jurisdiction to hear a plaintiff's claims, the motion to dismiss falls within the scope of *Federal Rule of Civil Procedure* 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1) (allowing a defense that the court "lack[s] subject matter jurisdiction"). When considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); *see Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) ("When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.") (internal citations omitted).

## III. ARGUMENT

Defendants' arguments in favor of dismissal are chiefly jurisdiction and prudential. (*See* Defs.' Mem. of Law in Supp. of Mot. to Dismiss and Resp. in Opp. to Mot. for Prelim. Inj. ("Defs.' Mem.") at 8-10 (arguing Plaintiff lacks standing); 11–15 (arguing that this action is barred by

4

sovereign immunity). The Defendants have unequivocally raised factual issues regarding standing—namely that Harry Wiley does not have standing, as asserted in his complaint because his medical evidence was reviewed by the Respiratorhy Health Division. (Defs.' Br. at at 10.) Claims as to sovereign immunity are likewise jurisdictional and Defendants again pointed to evidence outside the Amended Complaint. (*See*, *e.g.*, *id.* at 22, 26–27 (pointing to press releases and news articles). As such, evidence presented at the recent Preliminary Injunction hearing are relevant in reviewing the Motion to Dismiss. To be sure, subject matter jurisdiction is to be determined by the facts that existed at the time the complaint was filed. *Grupo Dataflux v. Atlas Global Grp. L.P.,* 541 U.S. 567, 570–71 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought) (quoting *Mollan v. Torrance,* 9 Wheat 537, 539 (1824)) (internal quotation marks omitted).

Even if the Court limits itself to the facts alleged in the Amended Complaint for some or all claims, it should find that the allegations are sufficient to deny the Motion to Dismiss. Plaintiff's allegations are sufficient to find that Plaintiff stated a claim upon which relief may be granted: 1) DHHS is not providing respiratory health services, (Am. Compl. ¶¶ 22–23); 2) he is unable to take advantage of services statutorily required to be offered through the DHHS, (*id.* ¶¶ 3, 43); and 3) consequently, Mr. Wiley is forced to continue working in a position where he is exposed to hazardous levels of dust.

**A.    Plaintiff Has Constitutional Standing and Fits Within the Zone of Interests of the Coal Mine Health and Safety Act of 1969 and Federal Mine Safety and Health Act of 1977.**

  **1.    Plaintiff satisfies the requirements of constitutional standing.**

Three elements are necessary to meet the requirements of standing under Article III of the U.S. Constitution: 1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected right which is (a) concrete and particularized, and (b) actual or imminent, not conjectural

or hypothetical;" (2) "there must be a causal connection between the injury and the action complained of;" and (3) "it must be likely as opposed to merely speculative, that the injury be redressed by a favorable decision." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992) (internal quotation marks, punctuation, and citations omitted).

Challenging standing, Defendants rely upon facts outside of the Amended Complaint to argue that Mr. Wiley has no injury. Principally, Defendants point to Exhibit 1 of their Memorandum claiming that Mr. Wiley does not have black lung and therefore cannot take advantage of services offered by the Respiratory Health Division. (Defs.' Mem. at 10.) However, Defendants ignore the sworn declaration attached with the Amended Complaint stating the Mr. Wiley was diagnosed with black lung disease by the Occupational Pneumoconiosis Board of the West Virginia Offices of the Insurance Commissioner ("OP Board"). (Am. Compl. at Ex. B; *see also id.* ¶ 14 ("In 2024, Harry Wiley learned he had developed coal workers' pneumoconiosis or 'Black Lung' Disease.").) If review is limited to the Amended Complaint, these factual allegations must be taken as true. *Kerns v. U.S.* 585 F.3d 187, 192 (2009). Accordingly, for the purposes of the Motion to Dismiss, Mr. Wiley is a coal miner with black lung, unable to take advantage of the services statutorily required by the Federal Mine Safety and Health Act and forced to work in unsafe conditions as the result of DHHS's failure to provide him with a job transfer opportunity. He clearly has an injury in fact, directly traceable to the DHHS's action of eliminating staff and functions of the Respiratory Health Division, and redressable though an injunction of this Court.

In the event that the Court looks beyond the Amended Complaint, it should evaluate facts adduced at the recent Preliminary Injunction hearing. Namely that "Mr. Wiley credibly testified that having learned that his November 2024 medical submission was not sufficient, he would like to submit additional documentation from other providers. . . [and] that he would seek additional

screening tests from NIOSH if they were being offered." (Mem. Op. & Order at 16.) The Court therefore should find as it did in granting the Preliminary Injunction that "Mr. Wiley has presented evidence of an actual, concrete, particularized, imminent injury, causally connected to Defendants' actions in indefinitely 'pausing' the CWHSP, and that injury would likely be redressed by the relief sought." (*Id.* at 17.)

## 2. Plaintiff is within the "zone of interests" established by the Mine Act.

In addition to constitutional standing there may be statutory prudential limits to a court's jurisdiction. "[T]he Administrative Procedure Act grants standing to a person 'aggrieved by agency action within the meaning of a relevant statute." *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp,* 397 U.S. 150, 153 (1970) (quoting 5 U.S.C. § 702 1964 ed., Supp. IV). The Supreme Court has required a "lenient approach" under the APA as "an appropriate means of preserving the flexibility of the APA's omnibus judicial review program." *Lexmark Int'l v. Static Control Components, Inc.* 572 U.S. 118, 130 (2014).

Mr. Wiley clearly falls within the zone of interests established by the Mine Act. The statute provides, "there is an urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines in order to prevent death and serious physical harm, and in order to prevent occupational diseases originating in such mines." 30 U.S.C. § 801(c). In establishing protection for miners, the statute further states, "it is the purpose of this subchapter to provide, to the greatest extent possible, that the working conditions in each underground coal mine are sufficiently free of respirable dust concentrations in the mine atmosphere to permit each miner the opportunity to work underground during the period of his entire adult working life without incurring any disability from pneumoconiosis or any other occupational-related disease during or at the end of such period." 30 U.S.C. § 841(b). The Mine

Act further requires that DHHS make examinations for occupational disease available at no cost to the miner. 30 U.S.C. § 843(c). When such examination, or other medical evidence, shows development of pneumoconiosis, the miner "shall be afforded the option of transferring from his position to another position in any are of the mine. . . where the concentration of respirable dust" is below prescribed levels. 30 U.S.C. § 843(b).

As a miner working underground and diagnosed with black lung disease, specifically coal workers' occupational pneumoconiosis, Harry Wiley is clearly within the zone of interests meant to be protected by the Mine Act. Because of the effective closure of the Respiratory Health Division, through reductions in force, and curtailment of services provided by the CWHSP, Mr. Wiley is person "aggrieved by agency action" within the meaning of the APA.

**B.      This Action Falls Within the Clear Waiver of Sovereign Immunity Granted by the Administrative Procedures Act.**

The APA contains a clear wavier of sovereign immunity. Specifically, it provides,

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States.

5 U.S.C. § 702. Defendants argue that this waiver is not applicable as to Count I because the Declaratory Judgment Act does not independently waive sovereign immunity and as to Count II because Plaintiff's claims fall within exceptions to the waiver. As explained below, and as already found by the Court in granting the Preliminary Injunction, neither of these arguments is persuasive.

**1.      Mr. Wiley is permitted to seek both declaratory and injunctive relief on his Administrative Procedures Act claims.**

The Parties agree that the Declaratory Judgment Act does not independently grant jurisdiction to courts when there is no other legal right invoked. Where, as here, however, when a party seeks nonmonetary relief, including declaratory relief, the APA provides the necessary waiver of sovereign immunity. *Perry Capitol LLC. v. Mnuchin*, 864 F.3d 591, 618 (D.C. Cir. 2017). Mr. Wiley is therefore permitted to seek declaratory relief on his APA claim.

### 2. Plaintiff's claims are squarely within the APA and not subject to exceptions to the waiver of immunity.

Defendants raise three separate arguments in their contention that Plaintiff does not fall within the APA's clear waiver of sovereign immunity: 1) that federal employment claims must be brought specific to personnel statutes; 2) that the Defendants' action was within their discretion and free from judicial review; and 3) that Plaintiff's allegations are generalized and do not relate to discrete agency action. (Defs.' Mem. at 17.) As it did when it granted the Preliminary Injunction the Court should reject each of these arguments.

#### a. Federal personnel statutes do not divest this Court of jurisdiction.

As the Court has already recognized, "It is patently absurd to suggest an illegal agency action that includes termination of employees is unreviewable." (Mem Op. & Order at 25–26.) Plaintiff Harry Wiley falls squarely within the grant of jurisdiction under the APA. The statute provides "A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by an agency action within the meaning of a relevant statute, is entitled to review thereof." 5 U.S.C. 702. As described above, Plaintiff Harry Wiley is undoubtedly a person aggrieved by the Defendant's action of functionally eliminating required services. He is not a federal employee, and his concerns are that the DHHS fulfill its statutory and regulatory duties— not the employment of specific individuals. These facts place this action in contrast to recent

9

decisions involving other challenges to the Executive's termination of large numbers of employees as well as the specific facts underlying the cases cited by the Defendants.

This case is also inherently distinguishable from the recent Fourth Circuit decision in *Maryland v. U.S. Dep't of Agriculture.* No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025). There, in a single page order the court stayed a district court injunction requiring the reinstatement of probationary government employees. *Id.* The court described the nature of the claims as challenges to the terminations of "thousands of probationary employees without following the procedures required for a reduction in force." Here in contrast, Plaintiff is not challenging the manner of the terminations, but rather the curtailment of agency functions and the failure of the agency to comply with statutory and regulatory obligations.

    **b. Non-compliance with the Administrative Procedures Act and the mandatory duties of substantive statutes are not within agency discretion.**

As Plaintiff alleged in his Amended Complaint, because of the closure of the Respiratory Health Division, Defendants are unable to effectively discharge duties required under the Mine Act. (Am. Compl. ¶¶ 22–23.) This allegation is further supported by the declaration of Dr. Scott Laney. (*Id*. at Ex. A ¶¶ 14, 17 & 19.) At the Preliminary Injunction hearing, Plaintiff presented additional "overwhelming evidence that the CWHSP has ceased operations." (Mem. Op. & Order at 21.)

An agency action "is committed to agency discretion by law" only "where a statute is drawn in such broad terms that in a given case there is no law to apply, and the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Webster v. Doe*, 486 U.S. 592, 592 (1988); *see also Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *INOVA Alexandria Hosp. v. Shalala,* 244 F.3d 342, 346 (4th Cir. 2001) (holding that the § 701(a)(2)

exception applies when "there is truly no law to apply"). Courts must "read the exception in § 701(a)(2) quite narrowly, restricting it to 'those *rare circumstances* where the relevant statute is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion.'" *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Lincoln v. Vigil,* 508 U.S. 182, 191 (1993)) (emphasis added). Even when Congress intended to create a wide zone within which decisions are committed to an agency's discretion, the agency still must meet "permissible statutory objectives." *Lincoln*, 508 U.S. at 183.

The applicable standard here is as follows: whether the Defendants are fulfilling their statutory and regulatory obligations, and whether they have made a decision which is arbitrary and capricious or otherwise contrary to law. *See* 5 U.S.C. § 706(a)(2) (requiring a court to set aside a decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). In granting Plaintiff's Motion for Preliminary Injunction, the Court identified a litany of duties and functions that the Defendants are failing to fulfill with the closure of the Respiratory Health Division. (Mem. Op. & Order at 10–12.) The exercise of these duties is not discretionary, and those duties provide a meaningful standard upon which to judge the Defendants' action.

Moreover, even with the benefit of a factual hearing, Defendants have not presented any rational explanation for the curtailment of necessary functions within the Respiratory Health Division. Indeed, Defendants have done little more than gesture towards vague plans for reorganization in support of its action. (Defs' Mem. at 22.) That is a far cry from the APA standard requiring an agency to "examine relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made." *ArkInitiative v. Tidwell,* 816 F.3d 119, 127 (D.C. Cir. 2016) (quoting *Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mutual Ins. Co.* 463 U.S. 29, 43 (1983)).

Finally, Defendants have provided no argument nor evidence to support the notion that they have discretion to impound funds congressionally allocated to NOISH for operating the CWHSP. Congress has specifically appropriated $362,800,000.00 *to NIOSH* for the express purpose of carrying out the purposes of the Mine Act, including Section 203 (codified at 30 U.S.C. § 843), which implements the CWHSP and job transfer programs. The Department has no authority to decline the use of funds for that purpose. *See*, *e.g.*, *J. Does 1-26 v. Musk*, No. 25-0462-TDC, 2025 WL 840574 at *25 (D. Md. March 18, 2025) ("[I]t is for the congress in the responsible exercise of its legislative power to make provisions for terminations of a program and until those provisions are made the function of the Executive is to administer the program in accordance with the legislative purpose.") (internal quotation marks omitted) (quoting *Local 2677, Am. Federation of Gov't Employees v. Phillips*, 358 F. Supp. 60, 72 (D.D.C. 1973)).

        **c.    Plaintiff's allegations are not generalized grievances against agency reorganization but a specific challenge to the Defendants' actions to functionally eliminate the Respiratory Health Division and thereby failing to deliver statutorily mandated services to Plaintiff and the Putative Class.**

Defendants argue that they are engaged in an ongoing process of reorganization and thus claim that their actions are not final, and that Plaintiff has presented only generalized grievances. (Defa.' Mem. at 25–26.) They do not dispute that services of the CWHSP and the Respiratory Health Division have been halted. Despite the Defendants' unsupported argument that a temporary "pause" is unreviewable, several courts have recently held that pauses to programs that provide critical services are reviewable final agency actions. *See e.g. Nat'l. Council of Nonprofits v. Office of Management and Budget*, No. 25 - 239 (LLA), 2025 WL 597959 at *13 (D. D.C. February 25, 2025) (finding an OMB "Pause Memorandum" caused legal consequences to Plaintiffs and others and was a reviewable final agency action); *Woonasquatucket River Watershed Council v. Dep't of Agriculture*, No. 1:25-cv-00097-MSM-PAS, 2025 WL 1116157 at *15-16 (D.R.I. April 15, 2025) (holding that a "breadth of caselaw" supports the conclusion that a pause in programs constitutes final agency action) (citing

*Louisiana v. Biden* 622 F. Supp. 3d 267, 291–92 (W.D. La 2022)); *Aids Vaccine Advocacy Coalition v. U.S. Dept. of State*, Nos. 25-00400 (AHA), 25-00402 (AHA), 2025 WL 752378 at *10 (D. D.C. March 10, 2025) ("The desire to review programs for efficiency or consistency, and to access information in one place, does not have a rational connection to the directives to proceed with a sudden, blanket suspension of congressionally appropriated aid."); *New York v. Trump*, No. 25-cv-39-JJM-PAS, 2025 WL 715621 at *8 (D. R.I. March 6, 2025). Indeed, in granting the Preliminary Injunction, the Court concluded, "[n]o evidence in the record suggests that the Defendants have any plan to provide the services that they have terminated. Therefore, the Court finds that the challenged actions are not merely tentative or interlocutory." (Mem. Op. & Order at 21-22 (footnote omitted).) Based on Plaintiff's allegations in the Amended Complaint, supported by evidence educed at the hearing, the Court should once again find that the Defendants' termination of services at the Respiratory Health Division through reductions in force constituted a final agency action.

## IV. CONCLUSION

This Court has already found that Plaintiff established a likelihood of success on his APA claim. For this reason, the reasons explained above, and any other appearing to the Court, Plaintiff respectfully requests that the Court deny the Defendants' Motion to Dismiss Counts I and II of his Amended Complaint.

                                                        **Respectfully Submitted,**
                                                        **HARRY WILEY, individually and on behalf of all others similarly situated,**
                                                        **By counsel:**

 */s/ Bren J. Pomponio*
Bren J. Pomponio (WVSB #7774)
MOUNTAIN STATE JUSTICE, INC.
1217 Quarrier Street
Charleston, West Virginia 25301
(304) 344-5565
(304) 344-3145 (fax)
bren@msjlaw.org

Samuel B. Petsonk (WVSB #12-418)
PETSONK PLLC
PO Box 1045
Beckley, WV 25802
(304) 900-3171 (phone)
(304) 986-4633 (fax)
sam@petsonk.com

J. Michael Becher (W. Va. Bar # 10588)
APPALACHIAN MOUNTAIN ADVOCATES
PO Box 507
Lewisburg, WV 24901
(304) 382-4798
mbecher@appalmad.org