## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

HARRY WILEY, individually and on
behalf of all others similarly situated,

     Plaintiff,

v.                                                        Case No: 2:25-cv-00227

ROBERT F. KENNEDY, JR., in his official
Capacity as Secretary of Health and Human
Services, and U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

     Defendants.

### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Without Article III constitutional standing, a plaintiff has no ground to seek review of certain agency decisions. And with no standing, arguments as to the ancillary jurisdictional bases for a certain claim are all for naught. Further, when a case or controversy no longer exists due to a change in facts, the litigation is moot, and a court's subject matter jurisdiction also ceases to exist.

Plaintiff urged the Court in previous briefing and at the preliminary injunction hearing to find that he had standing for purposes of a preliminary injunction because he wanted to take certain action but was unable. (*See* ECF No. 25 at 4 ("[A]bsent the involvement of this Court, Mr. Wiley has lost his ability to submit additional evidence in support of his Part 90 transfer request."); ECF No. 35 at 15:21-24 ("Q. Okay. And do you still seek to become a Part 90 miner by submitting evidence to [the National Institute for Occupational Safety and Health ("NIOSH")] for consideration in your application? A. Yes, I do.").) Now, not only does Plaintiff enjoy the ability to take the desired action, but Plaintiff has also already done so. Therefore, even if Plaintiff had

standing at the time the Amended Complaint was filed, Plaintiff has taken the desired action, his claims are moot, and the Court should dismiss this case.

## DISCUSSION

Defendants' Motion to Dismiss argues that Plaintiff lacks Article III constitutional standing to pursue this case because the specific injury alleged in the Amended Complaint and the injury on which the entirety of this case was based—that NIOSH failed to respond to a submission he made in November 2024—did not exist insofar as the supplemental evidence provided by Plaintiff to NIOSH was adjudicated in December 2024.[1] (*See* ECF No. 22 at 10.) Plaintiff argues in response to the motion, citing the Court's Memorandum and Opinion of May 13, 2025, that Plaintiff indeed has standing, based on his alleged desire "to submit additional documentation from other providers" to NIOSH for review. (*See* ECF No. 37 at 6–7 (quoting ECF No. 36 at 16); *see also* ECF No. 35 at 15:21-24, 117:10-12 ("[A]nd he plans to take further action, as is his right, to submit additional medical evidence.").)

As Plaintiff concedes, the Center for Disease Control's ("CDC's") website no longer indicates the Coal Workers' Health Surveillance Program ("CWHSP") is not accepting any requests for review of medical information. (ECF No. 37 at 3 n.3.) To be sure, the Respiratory Health Division ("RHD") at the Morgantown, West Virginia, NIOSH facility has returned to work, and the CWHSP is accepting medical examinations for review. *See* Brad McElhinny, *RFK Jr. Confirms Return of 110 Workers to Various Roles at NIOSH in Morgantown*, MetroNews (May 14, 2025, 1:45 PM), https://wvmetronews.com/2025/05/14/rfk-jr-confirms-return-of-110-

---

[1] Although Plaintiff testified at the hearing that he never received the letter mailed to him, (ECF No. 35 at 19:12–20:6), Plaintiff does not dispute that NIOSH put in the mail a letter to him indicating the determination by Dr. Tallaksen that Plaintiff's CT scan did not show evidence of pneumoconiosis and Plaintiff was ineligible for the Part 90 right to transfer option. (*See generally* ECF No. 37.)

workers-to-various-roles-at-niosh-in-morgantown.[2] In fact, since those changes took place, Plaintiff has submitted new medical evidence under 42 C.F.R. § 37.102. That new medical evidence will be processed in due course. Thus, Plaintiff's claimed injury no longer exists, and even if he originally had standing to pursue his claims, they are now moot.

"Federal courts can only review . . . executive actions when necessary 'to redress or prevent actual or imminently threatened injury to persons . . . .'" *Murthy v. Missouri*, 603 U.S. 43, 56–57 (2024) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009)). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). "And the Court has identified the doctrine of standing as a means to implement that [case or controversy] requirement." *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) (citing *Carney v. Adams*, 592 U.S. 53, 58 (2020)). Plaintiff does not dispute that he must have a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical," to establish standing under Article III of the Constitution. (ECF No. 37 at 5–6 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).) A demonstration of this type of injury in fact was necessary for the case to be filed and remains a requirement to proceed at this juncture. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016) (emphasizing that to be "concrete," an injury "*must actually exist*" (emphasis added)). And it is Plaintiff's burden to bear. *See Doe v. Va. Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013).

---

[2] Plaintiff maintains that "[t]here is absolutely no evidence that the functionality of the [RHD] will be restored," (ECF No. 37 at 2), but even before his recent brief was filed, Defendant Secretary Robert F. Kennedy, Jr., testified before the House Appropriations Committee to the contrary. Congressman Riley Moore asked the Secretary at the hearing, "'And the black lung screening program and the [CWHSP] are particularly important to West Virginia. My understanding is that the [CWHSP] at NIOSH will be fully reinstated. Is that correct?' Kennedy responded, 'Yes, the program will continue to function with continuity.'" Brad McElhinny, *RFK Jr. Confirms Return of 110 Workers to Various Roles at NIOSH in Morgantown*, MetroNews (May 14, 2025, 1:45 PM), https://wvmetronews.com/2025/05/14/rfk-jr-confirms-return-of-110-workers-to-various-roles-at-niosh-in-morgantown.

Plaintiff argues that "subject matter jurisdiction is to be determined by the facts that existed at the time the complaint was filed," (ECF No. 37 at 5 (citation omitted)), suggesting that Plaintiff's current ability to submit additional medical evidence to the CWHSP is irrelevant in analyzing subject matter jurisdiction. But Plaintiff ignores the manifest principle that "[p]laintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citation omitted). Standing can be lost during the pendency of litigation, in which case the action becomes moot. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). This Court has an obligation to dismiss a case for lack of subject matter jurisdiction at any stage of the proceeding—whether jurisdiction does not exist at the time a complaint is filed or whether it is lost at some later time. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines *at any time* that it lacks subject-matter jurisdiction, the court *must dismiss* the action." (emphasis added)); *Sasser v. Administrator*, 990 F.2d 127, 129 (4th Cir. 1993). Thus, the facts that contribute to Plaintiff's lack of standing may be assessed at the time the complaint was filed, and they may be assessed as they stand today (mooting this case). Either way, Plaintiff fails to demonstrate the necessary concrete injury in fact required to establish subject matter jurisdiction and move forward with this matter.

"[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (alteration in original), "which extends only to actual cases or controversies," *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citing U.S. Const. art. III, § 2). In other words, "[w]hen a case or controversy ceases to exist—either due to a change in the facts or the law—'the litigation is

moot, and the court's subject matter jurisdiction ceases to exist also.'" *Id.* (quoting *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015)). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018) (quoting *Simmons*, 634 F.3d at 763). "Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

The premise of the Amended Complaint rests on Plaintiff's allegation that despite "completing Form 0920-0020" and "mail[ing] the form and a radiographic image of his chest by certified mail to the NIOSH [CWHSP]" in November 2024, "[a]s of the filing of th[e] Complaint, Mr. Wiley ha[d] received no response from the CWHSP." (ECF No. 10 ¶¶ 16-18.) Once Defendants disproved that allegation in their Motion to Dismiss and at the preliminary injunction hearing by providing a copy of a letter dated December 10, 2024, adjudicating the November 2024 evidence submitted by Plaintiff,[3] (*see* ECF No. 14-1 ¶ 12 & Attach. K; ECF No. 29 at 41–42), Plaintiff's theory for standing shifted to a reliance on "a notice that is on the [CDC's CWHSP] website that it is no longer providing the critical services that it is obligated to provide such as a review of medical evidence," (ECF No. 35 at 118:10-13), and Plaintiff's desire to submit additional medical evidence to NIOSH for consideration, (*id.* at 15:21-24; *see also* ECF No. 37 at 6).

---

[3] The Court may consider documents outside of the pleadings when considering a motion to dismiss if the documents are integral to the complaint and their authenticity is not disputed. *See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Here, the December 10, 2024, letter is integral to the Amended Complaint in that it invalidates Plaintiff's asserted basis for standing, and Plaintiff does not dispute the authenticity of that letter.

Before Plaintiff filed his response brief, the CDC's website no longer stated that the CWHSP was not reviewing medical evidence, (ECF No. 37 at 3 n.3), and the RHD had returned to work in Morgantown, Brad McElhinny, *RFK Jr. Confirms Return of 110 Workers to Various Roles at NIOSH in Morgantown*, MetroNews (May 14, 2025, 1:45 PM), https://wvmetronews.com/2025/05/14/rfk-jr-confirms-return-of-110-workers-to-various-roles-at-niosh-in-morgantown. Since Plaintiff filed that brief, he has taken steps toward the action he claimed was unavailable—the desired action that allegedly gave him standing for injunctive relief. On May 20, 2025, Plaintiff's attorney emailed the CWHSP. *See* Ex. 1 (Reynolds Decl.) ¶ 9. Attached to that email were certain radiology reports and findings from the Occupational Pneumoconiosis Board of the West Virginia Offices of the Insurance Commissioner related to Plaintiff's benefits claim. *See id.* Plaintiff's attorney indicated that he would be sending an additional CT scan from February 20, 2022, that he would like reviewed and compared to the October 12, 2023, CT scan reviewed by the CWHSP radiologist in late 2024 to see if Plaintiff experienced changes consistent with pneumoconiosis, as well as certain International Labor Organization ("ILO") classifications. *See id.* As of this filing, the CWHSP has not received any other images or documents from Plaintiff's counsel besides the documents attached to his email of May 20, 2025. *See id.* ¶ 10. Further, as of this filing, Plaintiff has submitted approximately sixteen images to the CWHSP. *See id.* ¶ 11. On May 23, 2025, Laura Reynolds, Supervisory Team Lead for the CWHSP, emailed Dr. Robert Tallaksen, CWHSP chest radiologist, asking him to review all images (x-rays and CT images) dating back to 2014 to determine if Plaintiff experienced changes consistent with pneumoconiosis. *See id.* Dr. Tallaksen acknowledged Ms. Reynolds' email and replied that he will review the images on May 23, 2025, and respond to Ms. Reynolds about Plaintiff's pneumoconiosis determination. *See id.* As such, Plaintiff's alleged basis for

standing—an inability to submit additional medical examinations to the CWHSP for review—is moot based on the actions recently occurring.[4]

Further, although Plaintiff voluntarily dismisses Count III of the Amended Complaint, (ECF No. 37 at 1), Counts I and II require dismissal as well (even assuming Plaintiff can establish standing and show his claims are not moot). First, the United States has not waived sovereign immunity for either claim. (*See* ECF No. 22 at 11–14.) "The parties agree that the Declaratory Judgment Act does not independently grant jurisdiction to courts when there is no other legal right invoked." (ECF No. 37 at 9.) Consequently, Count I only survives if Count II is viable, and it is not. The waiver of sovereign immunity contained in the Administrative Procedure Act ("APA") does not apply to this case, and Plaintiff cannot make out a prima facie case on the merits of his APA claim. Defendants rely on their arguments within their Memorandum of Law in Support of Defendants' Motion to Dismiss in support of this assertion. (*See* ECF No. 22 at 17–28.) The fact that it became public knowledge prior to this Court's Memorandum Opinion and Order of May 13, 2025, (ECF No. 36 (entered at 2:49 PM)), that over 100 employees were permanently returning to work at the Morgantown NIOSH facility, @SenCapito, X (May 13, 2025, 12:11 PM), https://x.com/sencapito/status/1922323904271426034?s=46&t=A5-TwD9lmZhZ45Cb-L7ngw, lends additional credence to Defendants' argument that the initial Reduction in Force notices sent to NIOSH employees did not constitute final agency action under the APA.[5] (*See also* ECF No.

---

[4] Because Plaintiff's claims are moot, his argument that he is within the Mine Act's "zone of interests," (*see* ECF No. 37 at 7–8), is irrelevant.

[5] Plaintiff attempts to steer this Court toward other recent district court decisions wherein a program's pause was found to be reviewable under the APA, (*see* ECF No. 37 at 12–13), but every one of those decisions has been appealed and faces reversal. *See Nat'l Council of Nonprofits v. Office of Mgmt. & Budget*, No. 25-239 (LLA), 2025 WL 597959, at *1 (D.D.C. Feb. 25, 2025), *appeal docketed*, No. 25-5148 (D.C. Cir. Apr. 25, 2025); *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, No. 1:25-cv-00097-MSM-PAS, 2025 WL 1116157, at *1 (D.R.I. Apr. 15, 2025), *appeal docketed*, No. 25-1428 (1st Cir. May 1, 2025); *Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, Nos. 25-00400 (AHA), 25-00402 (AHA), 2025 WL 752378, at *1 (D.D.C. Mar. 10, 2025), *appeal docketed*, No. 25-5098 (D.C. Cir. Apr. 2, 2025); *New York v. Trump*, No. 25-cv-39-JJM-PAS, 2025 WL 715621, at *1 (D.R.I. Mar. 6, 2025), *appeal docketed*, No. 25-1413 (1st Cir. Apr. 28, 2025).

22 at 25–28.) Because Plaintiff is not likely to succeed on any APA claim and the United States has not waived sovereign immunity for those claims, Count II must be dismissed. As a result, Count I also must be dismissed.

**CONCLUSION**

For these reasons and those contained in the Memorandum of Law in Support of Defendants' Motion to Dismiss, (ECF No. 22), Defendants respectfully request that the Court grant their Motion to Dismiss, (ECF No. 14).

Respectfully submitted,

**LISA G. JOHNSTON**
**Acting United States Attorney**

**s/Fred B. Westfall, Jr.**
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
300 Virginia Street East, Room 4000
Charleston, WV  25301
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2025, I electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification to the following CM/ECF participants:

Samuel B. Petsonk
PETSONK PLLC
P.O. Box 1045
Beckley, WV 25802
(304) 900-3171 (phone)
(304) 986-4633 (fax)
sam@petsonk.com

Bren J. Pomponio
MOUNTAIN STATE JUSTICE, INC.
1217 Quarrier Street
Charleston, WV 25301
304-344-3144
Fax: 304-344-3145
Email: bren@msjlaw.org

J. Michael Becher (W.Va. Bar # 10588)
APPALACHIAN MOUNTAIN ADVOCATES
PO Box 507
Lewisburg, WV 24901
(304) 382-4798
mbecher@appalmad.org


**s/Fred B. Westfall, Jr.**
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
300 Virginia Street East, Room 4000
Charleston, WV  25301
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov