IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

HARRY WILEY,

and
MATTHEW WARD,

individually
and on behalf of all others similarly situated,

    Plaintiffs,

v.                          CIVIL ACTION NO.   2:25-cv-00227

ROBERT F. KENNEDY, JR., in his
official capacity as Secretary of Health
and Human Services, and
U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,

    Defendant.

## SECOND AMENDED COMPLAINT

1.    Coal miners face some of the greatest hazards of all American workers, including a recent epidemic of advanced coal mine dust lung disease ("CMDLD") as miners cut sandstone to reach the heavily depleted thin-seam coal reserves that remain after a hundred years of mining in Appalachia. In order to prevent black lung from developing into totally-disabling progressive massive fibrosis, the federal mine safety statutes since 1969 have afforded American coal miners a medical screening and epidemiological surveillance program, along with a unique right to transfer to a non-dusty job if they begin developing early signs of occupational lung disease.

2.    With no advance notice, on April 1, 2025, Defendant terminated most of the critical employees, including the chief medical officer, overseeing the CMDLD screening and job transfer

programs, thus jeopardizing miners---like the Plaintiffs, Mr. Wiley and Mr. Ward---who seek to utilize these critical and time-sensitive protections from continued dust exposure and debilitating disease.

3. The Coal Mine Health and Safety Act of 1969, as amended, has long provided both a health screening program to detect disease and the associated right to transfer upon detection of black lung. *See generally* 30 U.S.C. § 843. The epidemiology program is known as the Coal Workers' Health Surveillance Program ("CWHSP"). The job transfer program is known in the mining industry by the name of its implementing regulation, "Part 90." 30 C.F.R. Part 90.

4. The utilization of Part 90 has increased roughly tenfold in the past few years as miners became aware of increasingly severe CMDLD in Central Appalachia. So, the need for access to this program is urgent and growing in the face of severe hazards of exposure to respirable crystalline silica dust from the mining of sandstone to reach thin coal seams.

5. For these reasons, NOW COMES Plaintiffs, Harry Wiley and Matthew Ward, on behalf of themselves and others similarly situated, and bring this Class Action Complaint for declaratory judgment and injunctive relief against Defendant---the U.S. Department of Health and Human Services and its Secretary, Mr. Robert F. Kennedy, Jr.---seeking a declaration that Defendants comply with their statutory duties under 30 U.S.C. § 843 (requiring examinations of coal miners and affording job transfer rights); 30 U.S.C. § 811(a)(7) (providing authority for examinations of all miners generally); 30 U.S.C. § 811(a)(9) (anti-backsliding provisions providing that no Administration may weaken protections for miners); and with the requirements of their own existing regulations, 30 C.F.R. Part 90, and cease depriving him of due process of law, by restoring all personnel in the Respiratory Health Division of the National Institute for

Occupational Safety and Health who are integral to carrying out the epidemiological surveillance and job transfer provisions of the Mine Safety and Health Act of 1977.

## JURISDICTION AND VENUE

6. Jurisdiction over Plaintiff's claims is founded on the existence of a federal question. This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, and the Fifth Amendment to the U.S. Constitution, and jurisdiction is conferred pursuant to 28 U.S.C. § 1331 (federal question).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this District is where Plaintiff works and therefore, where a substantial portion of the events or omissions giving rise to this action occurred.

8. This Court is empowered to grant declaratory and injunctive relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706, for violations of, *inter alia*, the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and because the Department's actions are contrary to the Fifth Amendment to the U.S. Constitution.

## PARTIES

9. Plaintiff Harry Wiley was at all times relevant a resident of Kanawha County, West Virginia.

10. At all relevant times, Mr. Wiley was employed as a coal miner within Kanawha County in the Southern District of West Virginia.

11. Plaintiff Matthew Ward was at all times a resident of Mingo County, West Virginia.

12. At all relevant times, Mr. Ward was employed as a coal miner.

13. At all relevant times, Defendants conducted operations of the CWHSP and Part 90 throughout the Southern District of West Virginia.

14. Defendant U.S. Department of Health and Human Services contains the National Institute of Occupational Safety and Health ("NIOSH"), within which the Respiratory Health Division operates the CWHSP and Part 90 programs.

15. Defendant Mr. Robert F. Kennedy, Jr., is the Secretary of the U.S. Department of Health and Human Services.

## STATEMENT OF FACTS

***Overview of NIOSH's Coal Miner Health Programs: Background.***

1. In the federal Coal Mine Health and Safety Act of 1969 (the "CMHSA"), Congress established a program for monitoring the lung function of America's coal miners and affording them the right to transfer to a low-dust job if they began developing black lung disease. *See* 30 U.S.C. § 843. This program is commonly known by the name of its implementing regulation, "Part 90." 30 C.F.R. Part 90.

2. The statute directs the low-dust job transfer program to be located within the U.S. Department of Health and Human Services. 30 U.S.C. § 843. The CMHSA was amended by the federal Mine Safety and Health Act of 1977 (the "Mine Act"), which expanded miners' rights and preserved the rights in the CMHSA.

3. NIOSH and the Mine Safety and Health Administration have utilized these provisions of the Mine Act to continually improve protections for miners in the coal and other mineral mining industries---always improving and never rescinding the degree of protections provided under the law. Indeed, the Mine Act contains an anti-backsliding provision. *See* 30 U.S.C. § 811(a)(9) (providing that no Administration may weaken protections for miners); 30 U.S.C. § 811(a)(7) (providing authority for examinations of all miners generally).

4. The Occupational Safety and Health Act of 1970 established NIOSH as the research wing of the Occupational Safety and Health Administration, augmenting the statutory mandate for the Respiratory Health Division within NIOSH that carries out both the OSH Act and Mine Act. *See* 29 U.S.C. § 671; Pub. L. No. 91-596, § 22 (1970).

5. Following the Sago Mine Disaster in 2006, Congress permanently established NIOSH's Office of Mine Safety and Health to advance the technology-forcing health and safety protections of the Mine Act. *See* 29 U.S.C. § 671(h); MINER Act, Pub. L. No. 109-236, §6 (2006) (amending section 22 of the OSH Act); *see also* 30 U.S.C. § 863(b) (Mine Act requires coal mine operators to maintain ventilation controls in all work areas sufficient "to reduce the level of respirable dust to the lowest attainable level").

6. Among many other things, NIOSH recommends criteria for lifesaving workplace health and safety standards; investigates workplace outbreaks and safety crises at the request of employers and workers and provides recommendations and guidance for making workplaces safe and healthy; certifies experts qualified to analyze chest X-rays of black lung claimants against global standards for assessing the extent of lung damage; operates a periodic mobile black lung clinic to provide miners chest exams, free of charge; enables research into injuries and deaths of children engaged in farmwork; provides estimates of work-related exposures to radiation to enable the Department of Labor to assess the eligibility of workers in the nation's nuclear weapons program for the Energy Employees Occupational Illness Compensation Program Act of 2000 (EEOICPA) compensation for their cancers and other diseases; incentivizes the development of new mine safety technologies and tests them in real-world mining environments; leads the nation's largest initiative to track and understand the incidence of cancer among the nation's firefighters; and, through its National Personal Protective Technology Laboratory (PPT Lab), advances the

science and effective use of Personal Protective Equipment (PPE), such as respirators, footwear covers, and eye protection, on which 20 million workers (including one million firefighters) rely.

***Part 90 Application Process***

7. There are two means by which miners may apply for protection under Part 90. *See generally* 42 C.F.R. § 37.100-103; 30 C.F.R. § 90.3, 90.102, 90.102T.

8. First, the miner may participate in the screening program provided by his or her coal mine employer under the Mine Act, which will automatically submit the results to NIOSH. 42 C.F.R. § 37.100. Underground coal mine operators should either have a NIOSH approved plan for medical examinations under Section 203(a) of the Act and 42 C.F.R. Part 37 or comply with a written notice of arrangements for medical examinations that were made by NIOSH. In either instance, the operator is required to post the approved plan or NIOSH Notice for medical examinations on the mine bulletin board.

9. Second, and in the alternative, miners may submit an application to the NIOSH CWHSP providing evidence of the development of pneumoconiosis that they have developed at their own expense. *See* 42 C.F.R. § 37.103. NIOSH will evaluate the evidence in the same manner as if it were submitted under the operator's plan or the NIOSH arrangements. This is the means by which both Mr. Wiley and Mr. Ward applied for Part 90.

10. After interpretation of a miner's chest x-ray, NIOSH's Respiratory Health Division informs the miner of any rights he or she may have under Part 90 and includes a copy of the NIOSH report of medical findings in a letter to the miner. If the interpretation reveals evidence of pneumoconiosis, the miner also receives a form that is to be used to exercise the option to work in a low-dust area of a mine. If the findings from NIOSH show evidence of the development of pneumoconiosis, the miner will be awarded the right to exercise the Part 90 option.

11. Once an eligible miner exercises his or her job transfer right, they retain the right to rescind the exercise of that right and re-exercise it at any point later in their career so long as they remain eligible according to NIOSH. *See* 42 C.F.R. § 37.102; 30 C.F.R. § 90.3, 90.104, 90.104T ("Waiver of rights; re-exercise of option").

12. After transferring, Part 90 miners are protected by frequent dust sampling to ensure compliance with a reduced coal mine dust exposure limit.

13. Congress specifically appropriated funds to NIOSH for carrying out its obligations under the Mine Act and Part 90 in 2024 and 2025. *See* Further Consolidated Appropriations Act, 2024, PL 118-47, 138 Stat. 460, 654 (2024); American Relief Act, 2025, PL 118-158, 138 Stat. 1722 (2024); Full-Year Continuing Appropriations and Extensions Act, 2025, PL 119-4, 139 Stat. 4 (2025).

***Harry Wiley Applies for Part 90 in November 2024***

14. In 2024, Mr. Harry Wiley learned he had developed coal workers' pneumoconiosis or "Black Lung" Disease. The West Virginia Occupational Pneumoconiosis Board issued this diagnosis.

15. Black Lung is a latent and progressive disease that has a gradual onset, and becomes compounded with further exposure to hazardous dust. Early detection and removal of dusty hazards is the key to preventing the disease from progressing to the advanced, totally-disabling form known as progressive massive fibrosis.

16. On November 7, 2024, Mr. Harry Wiley took the initial step in applying for transfer to a non-dusty job under Part 90 by completing Form 0920-0020.

17. On November 8, 2024, Mr. Wiley mailed the form and a radiographic image of his chest by certified mail to the NIOSH Coal Workers' Health Surveillance Program, 1000 Frederick Lane M/S LB208, Morgantown, WV 26508.

18. As of the filing of this Complaint, Mr. Wiley has received no response from the CWHSP.

19. Mr. Wiley testified at a preliminary injunction hearing on May 7, 2025. Mr. Wiley testified that he had been denied his requested Part 90 job transfer and that he had learned of this only through filings in this matter and just days before the hearing.

20. Mr. Wiley further testified, at the May 7th hearing, that he intended to submit additional medical information in support of his job transfer.

21. Mr. Wiley also testified, at the May 7th hearing, that if additional medical screening were made available by DHHS that he would take advantage of that screening.

22. After the May 7th hearing, Mr. Wiley, through counsel, submitted additional evidence in support of his job transfer—namely his diagnosis by the West Virginia Occupational Pneumoconiosis Board.

23. Upon information and belief, Mr. Wiley's DHHS maintained their position that Mr. Wiley did not qualify for a Part 90 job transfer after reviewing the information from the West Virginia Occupational Pneumoconiosis Board.

24. Mr. Wiley has since undergone Computerized Tomography ("CT") imaging to obtain additional information in support of his job transfer application. A diagnostic radiologist interpreted the results as consistent with pneumoconiosis.

25. Mr. Wiley intends to submit this additional information in support of his Part 90 job transfer application.

26. As of the filing of this Complaint Mr. Wiley still intends to take advantage of DHHS provided medical imaging if it is made available.

27. Upon information and belief DHHS provided medical imaging was not available at the time Mr. Wiley underwent CT imaging in support of his job transfer application.

28. Upon information and belief, at the time of the filing of this Second Amended Complaint, DHHS is not providing free medical imaging to coal miners such as Mr. Wiley.

29. Mr. Wiley remains actively employed in underground coal mines, facing daily exposures to hazardous coal mine dust that would be prevented by a Part 90 transfer.

*Matthew Ward Applied for Job Transfer*

30. Matthew Ward has been employed as a coal miner since 1993.

31. In March 2025, the New River Clinic diagnosed Mr. Ward with complicated black lung disease.

32. In April 2025, Mr. Ward applied for a Part 90 job transfer program through DHHS, sending his application by certified mail.

33. Mr. Ward has not received any response to his application from DHHS.

34. Mr. Ward is currently receiving short-term Workers' Compensation for an injury but plans to return to work once his current injury has been abated.

35. Mr. Ward is seeking the Part 90 job transfer so that he has protection from further progression of his black lung disease.

36. Mr. Ward would like to use the DHHS mobile health screening services but is unable because they are not currently being offered.

*Defendants Terminate NIOSH Coal Workers' Health Programs*

37. On March 27, 2025, workers at the NIOSH facility in Morgantown (the "Morgantown Facility") received a notice of intent to conduct a reduction in force.

38. On April 1, 2025, Defendants notified nearly all employees at the Morgantown Facility at 1000 Frederick Lane that they were terminated or placed on administrative leave (the "Respiratory Health Division Closure"), including the chief medical officer of the Respiratory Health Division who oversees the CWHSP, the Part 90 evaluation program, and the B-reading certification program.

39. Without the Respiratory Health Division, NIOSH is unable to process all of its incoming and pending Part 90 applications such as those of Mr. Wiley and Mr. Ward.

40. On information and belief, because of the Respiratory Health Division Closure, Defendants, among other things, are unable to effectively discharge their mandatory statutory duties to administer the low-dust job transfer program as required by the Mine Act.

41. On information and belief, Defendants, among other things are not offering mobile health screening services, or otherwise complying with their mandatory statutory duty to offer free health screenings, in the form of chest X-rays convenient to every coal miner at an interval not to exceed 5 years.

42. On information and belief, Defendants have not reallocated the funds that would have provided for the full staffing of the Respiratory Health Division and the carrying out its statutory duties under the Mine Act to any other division of NIOSH or HHS for the purpose of implementing the CWSHP or Part 90 job transfer program.

43. On information and belief, Defendants have not made any communications to Congress about deferring or rescinding the budgetary authority for the 30 U.S.C. § 843 programs,

as would be required for an impoundment under the Impoundment Control Act. *See* 2 U.S.C. §§ 682-88.

44. The Mine Act mandates that the Secretary of Health and Human Services review and approve devices for the sampling of respirable dust in coal mines. 30 U.S.C. § 842 ("Each operator of a coal mine shall take accurate samples of the amount of respirable dust in the mine atmosphere to which each miner in the active workings of such mine is exposed. Such samples shall be taken by any device approved by the Secretary [of Labor] and the Secretary of Health and Human Services and in accordance with such methods, at such locations, at such intervals, and in such manner as the Secretaries shall prescribe in the Federal Register within sixty days from December 30, 1969 and from time to time thereafter.")

45. On information and belief, Defendants have failed to continue their mandatory research and approval duties regarding the prevention and control of respirable coal-mine dust exposure, including their time-sensitive and highly specific on-demand research function mandated by the Mine Act to identify toxic effects of substance found in mines in response to the request for such information by any mine operator or authorized representative of miners. *See* 30 U.S.C. § 951(a)-(b) (setting forth numerous mandatory research functions regarding coal-mine dust control to be completed by DHHS), *see especially* § 951(a)(11) (on-demand toxic effects research requirement) (requiring the Secretary of Health and Human Services to "determine, upon the written request by any operator or authorized representative of miners, specifying with reasonable particularity the grounds upon which such request is made, whether any substance normally found in a coal or other mine has potentially toxic effects in the concentrations normally found in the coal or other mine or whether any physical agents or equipment found or used in a

coal or other mine has potentially hazardous effects, and shall submit such determinations to both the operators and miners as soon as possible").

46. On information and belief, Defendants have ceased fulfilling their mandatory functions to review and approve devices for the sampling of coal and silica dust in underground mines. *See* 30 C.F.R. § 74.5 ("The National Institute for Occupational Safety and Health (NIOSH), Department of Health and Human Services, shall conduct tests to determine whether a CMDPSU that is submitted for approval under these regulations meets the requirements set forth in § 74.4"); 30 C.F.R. § 74.6 (quality control oversight requirements for dust sampling devices); 30 C.F.R. § 74.7 (ergonomic design review and approval requirements for dust sampling devices).

47. All operational and support functions appurtenant to the respirable dust research and approval duties set forth above were transferred to the Department of Health and Human Services by Pub. L. 104–208, div. A, title I, §101(e) [title II], Sept. 30, 1996, 110 Stat. 3009–233, 3009-244, which provided in part: "That the functions described in clause (1) of the first provision under the subheading 'mines and minerals' under the heading "Bureau of Mines" in the text of title I of the Department of the Interior and Related Agencies Appropriations Act, 1996, as enacted by section 101(c) of the Omnibus Consolidated Rescissions and Appropriations Act of 1996 (Public Law 104–134), are hereby transferred to, and vested in, the Secretary of Health and Human Services, subject to section 1531 of title 31, United States Code."

## CLASS ALLEGATIONS

48. Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals, pursuant to Rule 23 of the *Federal Rules of Civil Procedure*. The class consists of all coal miners who are or have been employed at mines within the jurisdiction of the Mine Act, 30 U.S.C. 801 et seq.

49. The requirements of Rule 23(a) are satisfied as follows:

(a) The class is numerous, with thousands of members, and joinder is impracticable due to the high number of putative Class Members, who are geographically spread around the region, making their joinder impracticable;

(b) There are questions of law and fact common to all putative Class Members, which predominate over any questions affecting only individual members, *i.e.*, did the Respiratory Health Division Closure prevent miners such as Mr. Wiley, Mr. Ward, and others from participating in the CWHSP and Part 90 job transfer programs, receiving medical screenings by the Department, and obtaining the protections afforded by the Mine Act;

(c) The named Plaintiffs' claims are typical of those of the Class as a whole because the named Plaintiffs were deprived of health surveillance and job transfer rights as well as other protections afforded by the Mine Act in the same manner as were the rest of the putative Class Members. Additionally, the named Plaintiffs' claims are typical of those of the Class as a whole because the named Plaintiffs were not able to take advantage of free health screenings and other protections of the Mine Act in the same manner as were the rest of the putative Class Members.

(d) The Plaintiffs have displayed an interest in vindicating the rights of the Class Members, will fairly and adequately protect and represent the interests of the Class, and is represented by skillful and knowledgeable counsel. The relief sought by the named Plaintiffs will inure to the benefit of the putative Class generally and the named Plaintiffs have no conflict to pursuing the interests of putative Class Members.

50. The requirements of Rule 23(b)(2) are also satisfied as follows:

(a) Prosecuting separate actions by individual putative Class Members would create a risk of: (1) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the Class; or (2) adjudications with respect to individual putative Class Members that, as a practical matter, would be dispositive of the interests of the other Members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; and

(b) Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## COUNT I – DECLARATORY JUDGMENT
## 5 U.S.C. §§ 702, 706

51. Plaintiffs incorporate the preceding paragraphs by reference.

52. A person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof pursuant to the Administrative Procedure Act. 5 U.S.C. § 702.

53. In actions for declaratory judgment under the Administrative Procedure Act, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall (1) compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(a).

54. The Department of Health and Human Services fulfills its twin obligations to conduct health surveillance and the job-transfer program under 30 U.S.C. § 843 by operating the Respiratory Health Division of NIOSH in Morgantown, West Virginia.

55. By closing the Respiratory Health Division, Defendants are violating their nondiscretionary mandatory statutory duties to conduct health surveillance and the job-transfer program under 30 U.S.C. § 843.

56. By ceasing their research and approval activities, Defendants are precluding Plaintiffs and all coal miners from receiving the benefits of dust protection that the Mine Act requires the Defendants to provide to them.

## COUNT II – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
## 5 U.S.C. § 706(2)(A) – Arbitrary, Capricious, and Unlawful Agency Action

57. Plaintiffs incorporate the preceding paragraphs by reference.

58. The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

59. Agency action is arbitrary and capricious if it is not the product of reasoned decision-making. This means, among other things, that an agency must provide an adequate evidentiary basis for its action and consider all important aspects of such action.

60. Upon request, the Defendants failed to adjudicate Plaintiffs' Part 90 applications, failed to issue notice of his right to transfer, and failed to tender an opportunity to be heard on the effective denial of these job transfer rights.

61. Defendants' decision to terminate the staff at the Respiratory Health Division and thereby stop implementing the mandatory Section 843 programs (CWHSP and Part 90) was arbitrary and capricious.

62. Defendants' decision to terminate the staff at the Respiratory Health Division and thereby stop implementing the CWHSP and Part 90 programs was contrary to law because it violated the Defendants' duties under the Mine Act. *See* 30 U.S.C. § 843.

63. Defendants' decision to terminate the staff at the Respiratory Health Division and thereby stop implementing the CWHSP and Part 90 was contrary to law because it defied the Congressional appropriation of funds for the CWSHP in 2024 that were continued through the end of 2024 and 2025.

64. Defendants' decision to terminate the staff at the Respiratory Health Division and thereby stop implementing the CWSHP and Part 90 was contrary to law because it was an impoundment of funds appropriated by Congress and therefore a violation of the Constitutional separation of powers between the legislative and executive branches.

65. Defendants' decision to terminate the staff at the Respiratory Health Division and thereby stop implementing the CWHSP and Part 90 was contrary to law because it was an impoundment of funds appropriated by Congress that did not comply with the Impoundment Control Act. 2 U.S.C. §§ 682-88.

66. Plaintiffs have suffered a legal wrong and has been adversely affected and aggrieved by the Department's arbitrary, capricious, and unlawful conduct because they have lost any effective means by which they can utilize their Part 90 job transfer rights or to undergo x-ray and pulmonary testing under the CWHSP, and the Respiratory Health Division must therefore be vacated and permanently enjoined.

67. Plaintiffs have suffered a legal wrong and been adversely affected and aggrieved by the Departments' arbitrary, capricious, and unlawful conduct because they have lost the means by which to request Defendants provide them with information regarding toxic effects of substances they encounter in the mines and to receive approval of critical technology for the sampling of respirable coal-mine dust, including specifically silica dust, and the cessation of the

Defendants' research and approval duties under the Mine Act must therefore be vacated and permanently enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court:

I. Declare that Defendants, in arbitrarily, capriciously, and unlawfully failing to fulfill their mandatory duties under 30 U.S.C. § 843 and spend the funds appropriated therefore, have violated the Administrative Procedure Act as alleged;

II. Declare that Defendants must fully restore the NIOSH Respiratory Health Division in Morgantown, West Virginia;

III. Compel Defendant to continue conducting health surveillance through the CWHSP and the job-transfer program under 30 U.S.C. § 843 by operating the Respiratory Health Division of NIOSH in Morgantown, West Virginia;

IV. Award such other equitable or remedial relief as may be appropriate;

V. Certify a class of all coal miners who are or have been employed at mines within the jurisdiction of the Mine Act, 30 U.S.C. 801 et seq.;

VI. Award to Plaintiffs and their attorneys all reasonable costs and expenses, including attorneys' and expert witness fees, pursuant to 28 U.S.C. § 2412(d)(2)(A) and 5 U.S.C. § 702; and

VII. Grant any such other and further relief as this Court may deem equitable and just.

**Respectfully Submitted,**
**HARRY WILEY and Matthew Ward,**
**individually and on behalf of**
**all others similary situated, By counsel:**

*/s/ Samuel B. Petsonk*
Samuel B. Petsonk (State Bar ID No. 12-418)
Petsonk PLLC
P.O. Box 1045
Beckley, WV 25802
(304) 712-9858 (office)
(304) 986-4633 (fax)
sam@petsonk.com

Bren J. Pomponio (WVSB# 7774)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
(304) 344-5565
(304) 344-3145 (fax)
bren@msjlaw.org

J. Michael Becher (W. Va. Bar # 10588)
APPALACHIAN MOUNTAIN ADVOCATES
PO Box 507
Lewisburg, WV 24901
(304) 382-4798
mbecher@appalmad.org